## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KAREN AYOUB,

       Plaintiff,

v.                                                          Case No. 06-CV-15768-DT

UNUM LIFE INSURANCE COMPANY OF
AMERICA,

       Defendant.

_____/

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending before the court is Defendant Unum Life Insurance Company of America's ("Unum's") motion to dismiss and Plaintiff Karen Ayoub's motion for summary judgment. The court has reviewed the briefs[1] and concludes a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant the motion.

## I. BACKGROUND

Plaintiff asserts in her complaint that she obtained a disability policy (the "Policy") from Defendant, which was effective July 2, 1990. (Compl. at ¶ 3.) According to

_____

[1]Although Defendant timely filed a document docketed as a response brief opposing Plaintiff's motion for summary judgment, Defendant inadvertently filed a duplicate of the reply brief instead of the response brief. [Dkt. # 13] When the court's staff discovered the error, it notified Defendant's counsel who immediately submitted the correct response brief. [Dkt. # 14] The court's staff additionally granted an extension of time until April 9, 2007, for Plaintiff to file her reply brief. As of the date of this order, the Plaintiff had not yet filed her reply brief in further support of her motion for summary judgment. Nonetheless, because reply briefs are optional and because the court is denying Plaintiff's motion for summary judgment without reaching the merits, the court need not wait for receipt of Plaintiff's reply.

Plaintiff, she became residually disabled under the terms of the Policy in October 2000, when she was diagnosed and began receiving treatment for Chronic Fatigue Syndrome. (*Id.* at ¶¶ 5, 14, 15.)  She further alleges that the Policy provides for a 60 day elimination period, which expired in December 2000.  (*Id.* at ¶¶10 & 16.)

Plaintiff submitted an application for benefits in July 2001, (Pl.'s Resp. at 1), which Plaintiff asserts was improperly processed by Defendant because it was submitted to a "round-table" review "for the express purpose of creating a reason for denying her claim," (Compl. at ¶¶ 6, 8, 17).  Plaintiff contends that after the round-table review, Defendant notified Plaintiff that date of disability would be January 3, 2000. (*Id.* at 19.)  Plaintiff argues that use of this date resulted in a denial of her claim, because Defendant "was able to calculate a reduced 'prior net income' amount" for Plaintiff, lower than that which would have been calculated had Defendant utilized her actual disability date of October, 2000.  (*Id.* at ¶¶ 19-25.)  Plaintiff's claim was denied on October 12, 2001.  (Pl.'s Ex. B.)  Her appeal of the denial was rejected on January 14, 2002.  (Pl.'s Ex. C.)

## II.  STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Kline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Wright v. MetroHealth Medical Center*, 58 F.3d 1130,

1138 (6th Cir. 1995).  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Wright*, 58 F.3d at 1138; *Columbia Natural Resources, Inc.*, 58 F.3d at 1109.

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1100-01 (6th Cir. 1995).  The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).  "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'"  *Lillard*, 76 F.3d at 726 (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

When, as here, the motion to dismiss relies on matters outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(b).

### B.  Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has

carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").

### III. DISCUSSION

Plaintiff's complaint asserts four causes of action against Defendant, all related to the denial of disability benefits under an insurance policy issued to Plaintiff: Count I, Breach of Contract; Count II, Bad Faith and Unfair and Prohibited Trade Practices under Mich. Comp. Laws § 500.2001; Count III, Promissory Estoppel; and Count IV, Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901.

### A. Count I, Breach of Contract

Defendant first seeks dismissal of Plaintiff's breach of contract claim, which constitutes the gravaman of Plaintiff's complaint. Although Michigan law imposes a six-

4

year statute of limitations for breach of contract claims, *see* Mich. Comp. Laws §

600.5807(8), Defendant argues that the Policy contained its own three-year limitations

period, with which Plaintiff failed to comply.

Under Michigan law, the rules for construction of an insurance contract are the

same as for any other written contract, and in interpreting insurance policies, courts are

guided by well-established principles of contract construction. *McKusick v. Travelers

Indem. Co.,* 632 N.W.2d 525, 528 (Mich. Ct. App. 2001). "An insurance contract is clear

if it fairly admits of but one interpretation. An insurance contract is ambiguous if, after

reading the entire contract, its language reasonably can be understood in differing

ways." *Farm Bureau Mut. Ins. Co. v. Blood,* 583 N.W.2d 476, 478 (Mich. Ct. App. 1998)

(citations omitted). Michigan law provides that "[t]he primary goal in the construction or

interpretation of any contract is to honor the intent of the parties." *Sault Ste. Marie Tribe

of Chippewa Indians v. Engler,* 146 F.3d 367, 372 (6th Cir. 1998) (citing *Rasheed v.

Chrysler Corp.*, 445 Mich. 109, 517 N.W.2d 19, 29 n. 28 (1994)). The court must

therefore look for the intent of the parties in the words used in the contract. *Id.* (citing

*Michigan Chandelier Co. v. Morse*, 297 N.W. 64, 67 (Mich. 1941). "The determination

of whether a contract is ambiguous, thereby making extrinsic evidence admissible for

interpretive purposes, is a question of law." *Id.* at 373 (citing *Wulf v. Quantum Chem.

Corp.*, 26 F.3d 1368, 1376 (6th Cir.1994)). The court "does not have the right to make a

different contract for the parties or to look to extrinsic

testimony to determine their intent when the words used by them are clear and

unambiguous and have a definite meaning." *Id.* (citation omitted).

Applying these principles to the contractual provision at issue, the court finds as

5

a matter of law that the Policy contained its own three-year period of limitations.  The

Policy contains a provision entitled "Legal Actions," stating that "[n]o one may start legal

action to recover on this policy until 60 days after written Proof of Loss has been given

to us.  Legal action must be started within three years after the written Proof of Loss is

required to be furnished."  (Policy at 11, Def.'s Ex. 1.)  The Policy also requires that

Proof of Loss "must be furnished to [Defendant] within 90 days after each month for

which a benefit is payable.  However, failure to furnish such proof within 90 days will not

reduce or nullify the claim if proof is furnished as soon as reasonably possible within

one year after the 90 days."  (*Id.* at 10.)  The court finds this language to be susceptible

of only one interpretation, that the Policy shortened the relevant limitations period to

three years after the Proof of Loss is required to be provided.

The Sixth Circuit has recognized that although the statute of limitations for

breach of contract actions under Michigan law is six years, "Michigan courts have held

that insurance contracts may contain shorter statutes of limitations."  *Santino v.*

*Provident Life and Acc. Ins. Co.,* 276 F.3d 772, 776 (6th Cir. 2001) (citing *Tom Thomas*

*Org., Inc. v. Reliance Ins. Co.*, 242 N.W.2d 396, 397 (Mich. 1976)); *see also Roberson*

*v. Metro. Life Ins. Co.,* 682 F.Supp. 907, 909 (E.D. Mich.1988) ("A contract for insurance

may contain a shorter statute of limitations than the general 6-year contract limitations

period.").  Accordingly, the Policy's abbreviated limitations period is valid and

enforceable under Michigan law.

Plaintiff's complaint alleges that she became residually disabled in October 2000.

(Compl. at ¶¶ 14, 15.)  The parties agree that the Policy provides for a 60 day

elimination period, which expired in December 2000.  (*Id.* at ¶¶10 & 16; Def.'s Mot. Br.

at 3.)  Thus, under the terms of the Policy, Plaintiff's Proof of Loss was required to be furnished to Defendant 90 days after the elimination period, or March 2001.  The Policy's three year contractual limitation period thus expired in March 2004.  Plaintiff, however, did not file her complaint until November 28, 2006, over two years outside of the limitation period.

Plaintiff does not appear to disagree with any of these calculations, nor does she dispute the validity of the contractual limitations period.  As Defendant points out in its motion, numerous courts have enforced similar provisions and dismissed lawsuits as untimely.  *See, e.g., Santino v. Provident Life and Acc. Ins. Co.,* 276 F.3d 772, 776 (6th Cir. 2001) (finding lawsuit untimely in light of policy's requirement that any claim be brought within three years of the plaintiff's written proof of loss); *Cole v. United Food & Commercial Workers Union-Employer Health & Welfare Fund,* No. 99-4354, 2000 WL 1720685, *1 (6th Cir. Nov. 7, 2000) (finding lawsuit time-barred where "it clearly appears . . . that plaintiff was obligated to submit a proof of loss within 90 days of the date of loss, and that plaintiff was required to bring his action within three years 'from the time written proof of loss is required to be furnished'"); *Andrzejewski v. Metro. Life Ins. Co.,* No. 06-11242, 2006 WL 2943300, *2 (E.D. Mich. Oct. 13, 2006) (finding claim time-barred where the plaintiff's disability allegedly began in November 2000, he was required to provide proof of loss by February 2001, the contractual statute of limitations expired in February 2004, and the plaintiff did not bring suit until February 2006).  Thus, absent any authority to the contrary, the court must enforce the unambiguous language of the Policy and hold that Plaintiff's claim is time-barred.

7

Plaintiff argues, however, that the relevant limitations period was tolled through operation of a Multi-State Regulatory Settlement Agreement (the "RSA"). Specifically, Plaintiff contends that Defendant entered into the RSA in or around November 2004,[2] which required Defendant to reassess any claims which were terminated on or after January 1, 2000. (Pl.'s Resp. at 3.) The RSA contains a provision which states that "any applicable statutes of limitations shall be tolled during the pendency of the Claim Reassessment Process." (RSA at p. 7, § B(2)(d), Pl.'s Ex. E.) Plaintiff asserts without explanation that, pursuant to the RSA, "the statute of limitations for all pending claims was tolled no later than September 2, 2003–the date the Multi-State Regulatory investigation was commenced." (Pl.'s Resp. at 11.)

Under the clear and unambiguous terms of the RSA, Plaintiff's proposed date does not constitute the start of the "Claim Reassessment Process." The "Claim Reassessment Process" is described in the RSA under section B(2)(a) which requires the Companies, within thirty days after the Implementation Date, to "form a claim reassessment unit . . . to handle further review of previously denied or terminated . . . disability claims." (RSA at p. 5, § B(2)(a), Pl.'s Ex. E.) The Implementation Date of the RSA is January 19, 2005. (Def.'s Reply, Ex. 1.) The RSA further provides that "[b]eginning earlier and ending no later than the fifteenth business day following the Implementation Date, the Companies shall mail a notice . . . to all of the Specified Claimants advising that they may resubmit their claim for further review by the Claim

---

[2]The two versions of the RSA presented to the court do not contain specific dates, but indicate November ___, 2004. (RSA at p. 1, 16, Pl.'s Ex. E; Def.'s Reply Ex. 2.) The Implementation Date of the RSA, however, is January 19, 2005. (Def.'s Reply, Ex. 1.)

Reassessment Unit." (RSA at p. 5-6, § B(2)(b), Pl.'s Ex. E.)   Thus, Defendant argues, and the court agrees, that the Claim Reassessment Process began no earlier than thirty days following the Implementation Date, or February 18, 2005.

Indeed, in Plaintiff's case the Claim Reassessment Process arguably began later.  Plaintiff contends that she was notified of the reassessment on January 5, 2005, and that Defendant provided the reassessment forms on November 2, 2005.  (Pl.'s Br. at 3.)  Plaintiff submitted her reassessment claim on June 27, 2006.[3]  (*Id.*)  Thus, it is arguable that Plaintiff's reassessment process did not begin until June 27, 2006.

In any event, Plaintiff cannot rely on the RSA to extend her limitations period as a matter of law.  While the RSA operated to toll the three-year contractual limitations period, Plaintiff's limitations period expired in March 2004, well before the final version of the RSA was drafted[4] or, more importantly, implemented, and well before the Claim Reassessment Process began, either generally or specifically as to Plaintiff.  In other words, by the time the Claim Reassessment Process began, there was nothing left of Plaintiff's limitations period to toll.[5]

———————————————

[3]As a result of the reassessment, Defendant advised Plaintiff that it would now consider a date of disability of October 25, 2000, but nonetheless denied the claim on a different basis.  (Pl.'s Ex. G.)

[4]Based on the first line of the RSA, the court utilizes November 2004 as the date that the RSA was finalized.

[5]Although not necessary to the court's analysis, the court also notes that on December 5, 2005, Plaintiff signed a form acknowledging that "any applicable statute of limitations is tolled during the pendency of the reassessment of my claim; however, I understand that my participation in the Claim Reassessment Process will not revive or reinitiate the statute of limitations with respect to the previous claim decision."  (Def.'s Ex. 4.)

9

Finally, the court rejects Plaintiff's argument that her "claim should also proceed based on Defendant's breach of the [RSA]." (Pl.'s Resp. at 11.) Plaintiff has not asserted a breach of contract action against Defendant as to the RSA. Plaintiff's complaint only asserts a breach of the Policy. For the reasons stated above, this claim is time-barred, and Plaintiff cannot utilize the RSA to revitalize the expired limitations period.

### B.  Count II, Bad Faith and Unfair and Prohibited Trade Practices

Under Count II, Plaintiff asserts a cause of action for "Bad Faith and Unfair and Prohibited Trade Practices" under Mich. Comp. Laws § 500.2001. Defendant moves to dismiss this claim because Michigan law does not provide a private cause of action for an alleged violation of the Unfair Trade Practices Act. *Crossley v. Allstate Ins. Co.,* 400 N.W.2d 625, 627 (Mich. Ct. App.1986) ("[N]o private cause of action exists in tort for a violation of the UTPA."); *Young v. Michigan Mut. Ins. Co.,* 362 N.W.2d 844, 846 (Mich. Ct. App. 1984) (holding that no private cause of action exists in tort for a violation of the UTPA. Plaintiff's response brief is silent with respect to Count II. Because Plaintiff has failed to rebut Defendant's well-supported basis for dismissal, the court will dismiss Count II.

### C.  Count III, Promissory Estoppel

Defendant next moves for dismissal of Plaintiff's claim for promissory estoppel. To establish a claim for promissory estoppel under Michigan law, a plaintiff must prove:

> (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided.

10

*Joerger v. Gordon Food Serv., Inc.*, 568 N.W.2d 365, 368 (Mich. Ct. App. 1997) (citation omitted).  A promissory estoppel theory allows for recovery only when no contract exists or "where a party doubts the existence of a contract."  *Advanced Plastic Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484, 491 (E.D. Mich. 1993); *see also Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 181 (6th Cir. 1996) ("Where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel[.]"); *General Aviation, Inc. v. Cessna Aircraft Co.,* 915 F.2d 1038, 1042 (6th Cir. 1990) ("[W]here . . . the performance which is said to satisfy the detrimental reliance requirement of the promissory estoppel theory is the same performance which represents consideration for the written contract, the doctrine of promissory estoppel is not applicable."  (citation omitted)).

Here, Defendant argues, and the court agrees, that Plaintiff cannot maintain her promissory estoppel claim because there is an express contract which governs the same subject matter on which her promissory estoppel claim is based.  Plaintiff's promissory estoppel claim is based on the terms and provisions of the Policy, and inasmuch as neither party disputes the validity of the Policy, Plaintiff's promissory estoppel claim must fail.  *See Terry Barr Sales Agency, Inc.,* 96 F.3d at 181.

Plaintiff does not argue otherwise, but instead asserts that her "promissory estoppel claim should be allowed based on the [RSA]."  (Pl.'s Resp. at 13.)  Because Plaintiff's complaint does not assert such a cause of action, she states in a footnote that she "would request leave to amend her complaint to include this claim."  (*Id.* at 13 n.3.) The court does not treat such conditional "requests," found in footnotes, as legitimate

motions under the federal or local rules.[6]  Not only does Plaintiff fail to set forth the

required elements and appropriate analysis for granting such leave, *see* Fed. R. Civ. P.

15, Plaintiff has also failed to file the required motion supported by a brief as set forth in

the local rules, E.D. Mich. LR 7.1(a),(c).  Plaintiff's request also fails to comply with

Local Rule 15.1, which provides that "[a] party who moves to amend a pleading shall

attach the proposed amended pleading to the motion."  E.D. Mich. LR 15.1.  Indeed,

without the a copy of the proposed amended complaint, accompanied by further briefing

from both parties, the court cannot determine whether amendment would be futile[7] or,

additionally, whether the requisite jurisdictional amount could be met in this diversity

action, given that all of Plaintiff's remaining claims have been dismissed.[8]  Thus,

because Plaintiff's complaint does not assert such a claim, and because she has not

been granted (nor, indeed, validly moved) for leave to amend her complaint, the court

cannot allow Plaintiff's promissory estoppel claim to proceed based on any alleged

---

[6]This court's practice guidelines provide that "Local Rule 7.1(b) requires that motions and responses to be accompanied by a separate brief. Under no circumstances may a motion be included within or tacked onto a response or a reply." http://www.mied.uscourts.gov/_practices/Cleland//motion.htm.

[7]It seems to the court that a cause of action for promissory estoppel based on the RSA may be barred for the same reasons any such cause of action cannot proceed for claims arising out of the Policy.  Either way, Plaintiff would be proceeding on alleged promises made pursuant to a contract of which neither party appears to doubt the validity.

[8]Michigan law provides that "[i]n a promissory estoppel action, the 'remedy granted for breach may be limited as justice requires.' . . .  The guiding principle in determining an appropriate measure of damages is to ensure that the promisee is compensated for the loss suffered to the extent of the promisee's reliance."  *Joerger v. Gordon Food Service, Inc.,* 568 N.W.2d 365, 369 (Mich. Ct. App. 1997).  Based on the limited facts before the court, the court is not persuaded that a claim for promissory estoppel related to the RSA would give rise to the same form of relief as a claim for breach of contract of the Policy, on which jurisdiction was originally based.

promises asserted in the RSA.[9]

### D.  Count IV, Michigan Consumer Protection Act

Under Count IV, Plaintiff asserts a cause of action under the Michigan Consumer

Protection Act ("MCPA"), Mich. Comp. Laws § 445.901.  In its motion to dismiss,

Defendant argues that "insureds cannot bring an action against an insured for violating

the MCPA."  (Def.'s Mot. Br. at 12.)  Defendant cites the recent case of *McLiechey v.*

*Bristol West Ins. Co.,* 408 F. Supp. 2d 516, 524 (W.D. Mich. 2006), which held that

because recent legislative amendments to the MCPA "eliminated a plaintiff's ability to

enforce the provisions of the MCPA against insurance companies through M.C.L. §

445.911, 'the MCPA no longer applies to insurance companies.'"  *Id.* (citing *Milhouse v.*

*Michigan Basic Prop. Ins. Ass'n*, No. 257701, 2005 WL 3501364 at *5 (Mich. Ct. App.

Dec. 22, 2005)).  Plaintiff does not respond to this argument in her response brief.  The

court deems Plaintiff's silence as a tacit admission that she cannot maintain a cause of

action under the MCPA.  Given Plaintiff's silence, and in light of the persuasive authority

presented by Defendant, the court will grant Defendant's motion to dismiss this count.

### E.  "Claims" for Emotional Distress or Bad Faith

Although Plaintiff's complaint does not contain separate counts for "emotional

distress" or common law "bad faith," Defendant states that Plaintiff's complaint could,

---

[9]For these same reasons, the court rejects Plaintiff's "request," found within her
response to Defendant's motion to dismiss, to permit her to "amend her complaint to
add an independent claim for fraud."  (Pl.'s Resp. at 10.)  Plaintiff's "request" was not
made in a motion or supported by a brief, and was not accompanied by a proposed
amended pleading.  Further, the court is without sufficient information to determine
whether a fraud claim would not be futile, would be pled with the required particularity or
would satisfy the jurisdictional amount.  It is thus impossible to grant such a "request,"
either in form or in substance.

arguably, be read to seek relief for such claims. Defendant further argues that, to the extent Plaintiff's complaint asserts such claims, they should be dismissed because they fail to state a claim upon which relief could be granted. (Def.'s Mot. Br. at 13.)

Defendant cites Michigan authority for its position that emotional damages are not recoverable for an alleged breach of an insurance contract. *See, e.g.,Kewin v. Massachusetts Mut. Life Ins. Co.,* 295 N.W.2d 50, 55 (Mich. 1980) ("[W]e hold that a disability income protection insurance policy contract is a commercial contract, the mere breach of which does not give rise to a right to recover damages for mental distress."); *Safie Enters., Inc. v. Nationwide Mut. Fire Ins. Co.,* 381 N.W.2d 747, 753 (Mich. Ct. App. 1985) ("[D]amages for emotional distress are not recoverable for a breach of contract of insurance."). Defendant has also cited authority for its position that a "bad faith" denial of insurance benefits does not give rise to a separate tort claim or support a cause of action for intentional infliction of emotional distress. *See, e.g., Roberts v. Auto-Owners Ins. Co.,* 374 N.W.2d 905, 909 (Mich. 1985) ("[W]e [have] declined to recognize a separate cause of action for bad-faith breach of an insurance contract."); *Runions v. Auto-Owners Ins. Co.,* 495 N.W.2d 166, 168 (Mich. Ct. App. 1992) ("At most, [the plaintiff] attempts to plead the nonexistent tort of bad-faith handling of an insurance claim. . . . The trial court properly held that plaintiff's complaint failed to state a claim."); *Atkinson v. Farley*, 431 N.W.2d 95, 97 (Mich. Ct. App. 1988) ("An insurer's wrongful, bad faith termination of benefits, by itself, is not sufficiently outrageous to support a claim for intentional infliction of emotional distress.").

Once again, Plaintiff fails to respond to Defendant's argument or present any authority in rebuttal to that which Defendant cites, and which clearly bars any claims for

emotional distress or bad faith.  Accordingly, to the extent Plaintiff's complaint raises these claims, they will be dismissed.

### F.  Plaintiff's Motion for Summary Judgment

Because the court has determined that Plaintiff's complaint must be dismissed in its entirety, the court need not address the substantive argument raised in her summary judgment motion.  As discussed above, Plaintiff's breach of contract action was not brought within the contractual limitations period.  Plaintiff thus cannot succeed on her motion for summary judgment, regardless of the merits of her breach of contract claim had it been timely asserted.  Plaintiff's motion for summary judgment will therefore be denied.

### IV.  CONCLUSION

IT IS ORDERED that Defendant's January 24, 2007 motion to dismiss [Dkt. # 5] is GRANTED and Plaintiff's February 28, 2007 motion for summary judgment  [Dkt. # 11] is DENIED.

A separate judgment will issue.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 6, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 6, 2007, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\06-15768.AYOUB.Dismiss.wpd